Case 4:23-cv-01416   Document 33   Filed on 01/02/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
January 02, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRAIG THOMAS, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-23-1416 |
| | § § | |
| GROUP 1 AUTOMOTIVE, INC. D/B/A STERLING MCCALL BUICK-GMC, | § § § | |
| | § § | |
| Defendant. | § § § | |

**MEMORANDUM AND OPINION**

Craig Thomas worked at a car dealership owned by Group 1 Automotive Inc., d/b/a Sterling McCall Buick-GMC, between 2019 and 2022. The dealership fired Mr. Thomas, who is African American, in June 2022, when he was 59 years old. The dealership claims that it fired Mr. Thomas because he violated the dealership's cash handling policies. Mr. Thomas claims that he was terminated because of his race and age. He sued the dealership under Title VII and the Age Discrimination in Employment Act. (Docket Entry No. 1). The dealership now moves for summary judgment on all of Mr. Thomas's claims. (Docket Entry No. 23).

Based on the pleadings, the motion, the record, and the applicable law, the court grants the motion for summary judgment. All Mr. Thomas's claims are dismissed. The reasons for these rulings are set out below.

**I.     Background**

Mr. Thomas worked for the dealership for three discrete periods between 2019 and 2022. (Docket Entry No. 23-1 at 2). The first period of employment ended when Mr. Thomas resigned. (*Id.* at 4). The second period ended when Mr. Thomas was among those laid off due to the COVID-

19 pandemic. (*Id.* at 5–6); (Docket Entry No. 23-3 at ¶ 6). The third period, from November 2021 to June 2022, ended when Mr. Thomas was terminated. (Docket Entry No. 23-1 at 5). This lawsuit disputes the reasons for the June 2022 termination.

Between November 2021 and June 2022, Mr. Thomas worked as a Service Administrator at the dealership. (*Id.*). His responsibilities included "logging cash received by the Service Department, reconciling money, and depositing it within the Dealership's safe." (Docket Entry No. 23-2 at ¶ 10). According to the dealership, Mr. Thomas had exclusive access to the dealership's cash drawer, which was in his office. (*Id.* at ¶ 11). Mr. Thomas states that "all service employees had access to the cash drawer during the weekends." (Docket Entry No. 26-1 at ¶ 10).

Mr. Thomas received training on, and was required to adhere to, the dealership's "Cash Handling Procedures [P]olicy" in its "Employee Handbook" and the dealership's "Cash Policies Representation Letter." (Docket Entry No. 23-2 at ¶¶ 7–8); (Docket Entry No. 23-1 at 20). Under these policies, any employee whose "job involves handling the company's or a customer's money," like Mr. Thomas, "must take great care to ensure that [cash] is never left unattended and is always properly accounted for and remitted as soon as possible." (Docket Entry No. 23-2 at ¶ 8); (Docket Entry No. 23-1 at 20). The policies required that "[a]ny suspected cash theft . . . be reported to the Regional CFO immediately," "[a]ll cash . . . be kept in a locked safe overnight," and "[t]he cash drawer . . . be counted down to the starting amount each day with the overage/shortage recorded." (Docket Entry No. 23-4 at 2–3). The policy stated that any violation "can result in discipline up to and including termination of employment." (Docket Entry No. 23-2 at ¶ 8). Mr. Thomas signed a statement saying he had read and understood these policies. (Docket Entry Nos. 23-4, 23-5).

The dealership contends that it experienced three incidents of "cash discrepancies" between March 2022 and May 2022. (Docket Entry No. 23-2 at ¶ 11). First, in March 2022, Craig Robinson, the Service Director at the dealership, discovered that $100 was missing from the cash drawer. (*Id.* at ¶ 12). When Mr. Robinson investigated, Mr. Thomas initially said that he had found the $100 in the back of the drawer. (*Id.* at ¶ 13). Later, Mr. Thomas said that he had "put [his] own hundred dollars in" "because [he] didn't want [his] drawer to come up short." (Docket Entry No. 23-1 at 23).

The second cash discrepancy involved $536 that a Service Shop Foreman, Ramon Zapata, reportedly had given to Mr. Thomas. (Docket Entry No. 23-2 at ¶ 14). According to Mr. Robinson, Mr. Thomas first told him that he never received the money, and then later admitted that he had received the cash but "had given it back to Zapata because he asked for it." (*Id.* at ¶¶ 14–15). Mr. Thomas wrote two explanations on the Cash Log: "Gave Back to Roman [sic]," which was crossed out, and "Dropped," meaning deposited in the dealership's safe.



(Docket Entry No. 23-9); (Docket Entry No. 23-1 at 36).

The third cash discrepancy involved a missing $250. (Docket Entry No. 23-2 at ¶ 16). According to Mr. Robinson, Mr. Thomas said that "he never received the money from Service Advisor Basil Khan." (*Id.*). However, Mr. Khan told Mr. Robinson that he had given Mr. Thomas the money, which another Service Advisor reportedly witnessed. (*Id.*).

Mr. Robinson reports that his investigation of these cash discrepancies was hindered by Mr. Thomas's "various leaves of absence" and "poor record-keeping practices." (*Id.* at ¶ 17).

3

Many of Mr. Thomas's entries in the cash log were difficult to read because they "were scratched out or written with a 'disappearing ink' marker, which was only intended to be used to check for counterfeit bills." (*Id.*). Mr. Robinson found that behavior "suspicious." (*Id.* at ¶ 19). Additionally, according to Mr. Robinson, "several different Service Advisors reported that Thomas was disorganized, loose with money, and would leave cash out in the open." (*Id.* at ¶ 18).

Mr. Robinson's investigation led him to conclude that Mr. Thomas "was either stealing or mishandling money and that he had plainly violated the [dealership's] cash handling policies." (*Id.* at ¶ 20). As a result, Mr. Robinson and the General Manager at the dealership, Kimono Cooper, decided to terminate Mr. Thomas's employment on June 24, 2022. (*Id.*).

Mr. Thomas denies stealing money from the dealership. He claims that none of the above incidents resulted in any monetary loss to the dealership. (Docket Entry No. 26-1 at ¶¶ 8, 27–28). Mr. Thomas reports that was treated differently, and ultimately terminated, after he revealed his cancer diagnosis. (*Id.* at ¶¶ 5–6); (Docket Entry No. 23-1 at 44). In either March or May 2022, Mr. Thomas told Mr. Robinson—who was his direct supervisor—that he had cancer. (Docket Entry No. 26 at ¶ 21); (Docket Entry No. 26-1 at ¶ 5). According to Mr. Thomas, Mr. Robinson "made comments that the cost of my medication was horribly expensive and it was costing [him] and the company." (Docket Entry No. 26-1 at ¶ 6).

While employed at the dealership, Mr. Thomas never complained about race or age discrimination. (Docket Entry No. 23-1 at 9); (Docket Entry No. 23-2 at ¶ 22); (Docket Entry No. 23-3 at ¶ 11). He testified that he felt he was treated well until he was terminated. (Docket Entry No. 23-1 at 9). After Mr. Thomas was terminated, he texted Mr. Robinson saying, "it was an absolute pleasure to work with you." (*Id.* at 34).

## II.     The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a

5

genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which the evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

### III. Analysis

#### A. The Summary Judgment Evidence

As a preliminary matter, Mr. Thomas has moved to strike three paragraphs from Mr. Robinson's declaration and two statements from General Manager Cooper's declaration. (Docket Entry No. 27). In all five paragraphs, the declarants reiterate statements made to them by employees in the Service Department at the dealership. *See* (*id.*). Mr. Thomas argues that these statements should be disregarded because they are hearsay.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). The dealership argues that the challenged statements are not

6

offered for the truth of their content, but rather to show the effect on Mr. Robinson's and Ms. Kimono's mindset when investigating the cash discrepancies. (Docket Entry No. 30). That is a permissible purpose for the use of out-of-court statements. *See, e.g.*, *United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) ("Ordinarily, a statement is not hearsay if it is offered to prove the statement's effect on the listener."); *see also United States v. Kizzee*, 877 F.3d 650, 659 (5th Cir. 2017) ("Testifying officers may provide context for their investigation or explain 'background' facts" because the "out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions.").

The court will consider the challenged statements only for the permissible purposes detailed above, and not for the truth of the matter asserted therein. Mr. Thomas's motion to strike, (Docket Entry No. 27), is denied.

### B. The Race Discrimination Claim

To make a prima facie case for race discrimination, a plaintiff must show that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting reference omitted). If the plaintiff makes that showing, "the burden shifts to the employer to offer a non-discriminatory reason for the adverse action." *Id.* "If the employer offers such a reason, the burden shifts back to the plaintiff to show that that reason is pretext for a discriminatory purpose." *Id.*

Mr. Thomas has failed to make a prima facie showing of race discrimination because has not presented any direct or circumstantial evidence of racial animus. There is no evidence in the record that anyone made derogatory comments to Mr. Robinson because of his race, or that he ever complained about race discrimination while employed at the dealership. There is also no

evidence that he was replaced by someone of a different race. His race discrimination claim turns on whether he "was treated less favorably than some other similarly situated employees" of a different race. *See id.* (quoting reference omitted).

Mr. Thomas states that he was "treated substantially differently than . . . [his] co-workers Basil Khan (white[,] 29 years old) and Travis Zeetka (white[,] 30 years old)," neither of whom was terminated as a result of Mr. Robinson's investigation into the cash discrepancies. (Docket Entry No. 26 at 13). Mr. Khan and Mr. Zeetka were Service Advisors, not Service Administrators, so they had different cash responsibilities than Mr. Thomas. (Docket Entry No. 23-1 at 42–44). Unlike Mr. Thomas, they were not responsible for securing cash in the safe and reconciling deposit amounts. (*Id.* at 43). Moreover, it was Mr. Thomas—not Mr. Khan or Mr. Zeetka—who was involved in all three cash discrepancy incidents between March and May 2022. Mr. Khan and Mr. Zeetka are not similarly situated comparators. Even if they were, Mr. Thomas has not addressed Aaron Fofana, an African American Service Advisor who was involved in one of the cash discrepancy incidents but was not terminated as a part of Mr. Robinson's investigation. It is also undisputed that General Manager Cooper, who was involved in the decision to terminate Mr. Thomas, is African American, which undermines an inference that Mr. Thomas's termination was racially motivated. *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019) ("[D]iscrimination is less likely when the supervisor is in the same protected class as the plaintiff."). Mr. Thomas has failed to make a prima facie showing for race discrimination.

Mr. Thomas's race discrimination claim also fails because he has not raised a genuine dispute about whether the dealership's proffered reason for terminating him was pretextual. The dealership claims that it terminated Mr. Thomas after a thorough investigation that included

"reviewing the cash logs and invoices and speaking to everyone in the Service Department." (Docket Entry No. 23-2 at ¶¶ 17–18). This investigation led to the conclusion that Mr. Thomas was "stealing or mishandling money and that he had plainly violated the Company's cash handling policies," (*id.* at ¶ 20), a valid, non-discriminatory reason for his termination.

Mr. Thomas points to the following as evidence that this reason is pretextual: (1) his performance history, including being hired at the dealership three times, being promoted to Service Administrator, and lacking any disciplinary history; (2) the dealership's insufficient documentation of the investigation; (3) contradictions between Mr. Thomas's and the dealership's account of his termination, and (4) Mr. Thomas's alleged innocence. (Docket Entry No. 26 at 13–15).

None of these responses raise a genuine dispute about whether the dealership's proffered reason is a pretext for race discrimination. Mr. Thomas has failed to point to evidence challenging that the dealership had a good-faith belief that he had mishandled money and violated company policies and that "the decision to discharge [Mr. Thomas] was based on that belief." *See Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993). "To the extent that [Mr. Thomas's] summary judgment evidence relates to his innocence of the . . . charge, it is irrelevant." *Id.* at 1166; *see also Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016), *judgment entered*, No. CV H-15-2825, 2016 WL 6875830 (S.D. Tex. Nov. 21, 2016). Mr. Thomas's complaints about the lack of documentation also fail to suggest that the results of the investigation are "unworthy of credence." *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Critically, as detailed previously, there is simply no evidence in the record that race played any role in Mr. Thomas's termination.

Because Mr. Thomas has failed to make a prima facie showing of racial discrimination and has failed to raise a fact issue as to whether the dealership's proffered explanation for his termination was a pretext for illegal race discrimination, this claim is dismissed.

### C.     The Age Discrimination Claim

To establish a prima facie claim for age discrimination, a plaintiff must show that:

> (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (quoting reference omitted). "If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Id.* If the employer does so, then the plaintiff bears the burden to show that the proffered reason is pretextual. *See id.*

Like the race discrimination claim, there is no direct or circumstantial evidence of age discrimination in the record. There is no evidence that anyone at the dealership made derogatory comments to Mr. Thomas about his age. The comments about Mr. Thomas's health, without more, do not constitute age discrimination. *See, e.g.*, *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1166–67 (8th Cir. 1985) (comments about heart problems did not demonstrate age discrimination because those problems "may arise at any age"); *cf. Boyd v. Guidant Sales Corp.*, No. 3:05-CV-1822-M, 2007 WL 415328, at *5 (N.D. Tex. Feb. 7, 2007) (finding evidence that "associate[d] health problems with comments about the Plaintiff's age" demonstrated age discrimination). Moreover, the dealership hired Mr. Thomas three separate times when he was 56 or older. Both supervisors responsible for Mr. Thomas's termination were over 40 years old. As detailed previously, Mr. Khan and Mr. Zeetka are not similarly situated employees treated differently.

Mr. Thomas claims he was "replaced by a younger worker, Nora Flores." (Docket Entry No. 26 at 15). He cites no evidence of Ms. Flores's age. *See id.* (citing Exhibit A, a declaration from Mr. Thomas that does not state Ms. Flores's age). Ms. Flores was already working at the dealership when Mr. Thomas was hired for the third time. *See* (Docket Entry No. 23-1 at 13, 18). She trained Mr. Thomas, and he "fill[ed] in her position" when she went on maternity leave. (*Id.*). The fact that Ms. Flores resumed her prior role after returning from leave is not evidence of age discrimination.

Mr. Thomas has not made a prima facie showing of age discrimination. Even if he had, his claim fails because he cannot show that the dealership's proffered reason for terminating him was pretextual, as detailed above. The age discrimination claim is dismissed.

## IV.   Conclusion

The dealership's motion for summary judgment, (Docket Entry No. 23), is granted. All of Mr. Thomas's claims are dismissed with prejudice. Final judgment is entered by separate order.

SIGNED on January 2, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge